**SO ORDERED.**

**SIGNED this 20 day of August, 2014.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### GREENVILLE DIVISION

IN RE:

EDWARD L. BRAXTON,                          CHAPTER 7
WANDA F. BRAXTON,                           CASE NO. 09-08876-8-RDD

      DEBTORS

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is the Motion to Show Cause filed by Stephen Beaman, Trustee for Edward L. Braxton and Wanda F. Braxton on June 13, 2014, moving the Court for an Order directing W.S. Badcock Corporation ("Badcock") to Appear and Show Cause as to why it should not be held in contempt for failing to abide by this Court's Order Allowing Motion for 2004 Examination entered on December 31, 2013, this Court's Modified Order for Rule 2004 Exam entered on February 14, 2014 and the Order Confirming Authority of the Trustee entered on February 14, 2014. All of the above motions were served on Badcock and its counsel. No responses or objections were filed. No motions to set aside or notices of appeal were filed and the time for such has expired. An Order to Show Cause was entered on June 18, 2014 requiring Badcock to appear and show cause as to why it should not be held in contempt for failing to abide by this

Court's Order Allowing Motion for 2004 Examination entered on December 31, 2013 and modified on February 14, 2014. The Court conducted a hearing on July 29, 2014 in Greenville, North Carolina to consider the Trustee's Motion. This Court entered an Order on July 29, 2014, which directed Badcock not to go forward with a hearing on the Motion to Dismiss in Case Number 2014-CA-000389, which was set for hearing on July 30, 2014 in the Circuit Court in Polk County, Florida. This Court's July 29, 2014 Order from the bench addressed the monetary sanctions imposed and the sanctions imposed regarding the pending Motion to Dismiss scheduled for hearing the following day, July 30, 2014 in Polk County, Florida.

This Memorandum Opinion and Order addresses this Court's findings of fact and the imposition of sanctions on Badcock.

## **BACKGROUND**

Edward L. Braxton and Wanda F. Braxton (the "Debtors") filed a joint petition for relief under Chapter 13 of the United States Bankruptcy Code on October 12, 2009. The case was subsequently converted to a Chapter 7 proceeding on or about June 16, 2011. Stephen L. Beaman was appointed as the Chapter 7 trustee ("Trustee"). The Debtors' bankruptcy is currently pending in the United States Bankruptcy Court for the Eastern District of North Carolina, Case No. 09-08876-8-RDD.

Prior to filing bankruptcy, Edward L. Braxton operated and was the sole shareholder of Levy Management Group, Inc. ("Levy"), a North Carolina corporation. Prior to the Debtors' bankruptcy filing, Badcock executed four management agreements with Levy for the operation of Badcock stores in North Carolina[1]. At the time the bankruptcy petition was filed, Edward L. Braxton owned

---

[1]Levy Management Company, Inc. executed four management agreements for the North Carolina stores located in Washington, Greenville, Rocky Mount, and Wilson.

100% of the stock in Levy. Levy is no longer operating, but the Trustee believes that the assets of Levy may be liquidated for a sum greater than its liabilities, with a resulting distribution to the bankruptcy estate. The Debtor as President of Levy, terminated Levy's contracts with Badcock as the Debtor was diagnosed with terminal cancer. Badcock then exercised its option under the management agreements to acquire "the Dealership" of Levy Management defined in the four management agreements as "the furniture, appliance, the complete home furnishings business" of Levy, including all records, accounts receivable, name and goodwill, and similar assets of Levy. Those assets have been in the possession of Badcock since 2009, including all records of Levy. The Trustee has argued that those records are necessary to calculate the amount due and payable to Levy from Badcock for those assets[2]. While Badcock still retains possession of Levy, it has paid nothing for the primary asset which the Trustee argues are the accounts receivable.

On December 5, 2013 the Trustee filed a Motion for Rule 2004 Examination of Badcock. The Motion was served on Badcock Corporation and its counsel. An Order was entered by this Court on December 31, 2013, granting the Motion. No responses or objections were filed. No motions to set aside or notices of appeal were filed and the time for such expired. This Court's Order required Badcock to produce documents to the Trustee at his office on December 20, 2014 at 10:00 am and to designate an agent or agents with knowledge of specific information, including information regarding the relationship between Badcock and Levy on January 13, 2014 at 10:00am

---

[2]Upon release from the contracts, Levy was entitled to a percentage of recovery of accounts receivable generated by the stores managed by Levy. The Trustee stated at the July 29, 2014 hearing that Badcock had submitted proposals to Levy and to the Mr. Braxton, prior to his death, showing that Badcock owes Levy approximately $88,000.00. The Mr. Braxton, as President of Levy, rejected this proposal because he believed the amount due and owing was approximately $400,000.00. The Trustee estimates anticipated recovery could be in the hundreds of thousands of dollars, although the exact amount will remain unknown until the Trustee is able to conduct a Rule 2004 examination.

in Tampa, Florida. Badcock is subject to the jurisdiction of this Court and the Court found it appropriate for the documents to be produced at the Trustee's office in Wilson, North Carolina. Badcock regularly transacts business in North Carolina as it has a Distribution center in Mebane, North Carolina.  Further, Badcock's website lists numerous Badcock stores in eastern North Carolina[3].

Subsequent to the entering of this Court's December 31, 2013 order, the Trustee represented that counsel for Badcock communicated with him expressing Badcock's desire to have the documents produced and the examination take place in Florida, even though this Court had already ordered that the documents be produced in Wilson, North Carolina for the Rule 2004 Exam. The Trustee agreed. The second Motion was served on Badcock Corporation and its counsel. No responses or objections were filed.  The Order for Rule 2004 examination was entered. No motions to set aside or notices of appeal were filed and the time for such expired. The Trustee explained to the Court, that in an effort to make the production more convenient for Badcock, the Trustee did not object to allowing the production of documents to take place in Florida. Pursuant to this agreement between Badcock and the Trustee, this Court entered a Modified Order for Rule 2004 Examination on February 14, 2014. The Order required Badcock to produce specific documents on March 24, 2014 at 10:00 am at a place in Tampa, Florida. It also required Badcock to designate and produce for oral examination one or more officers, agents, or employees with knowledge of specific

---

[3]There are numerous Badcock stores located in North Carolina which include, but are not limited to, stores in the following thirty eight cities:
Aberdeen, Asheboro, Burlington, Concord, Dunn, Elizabethtown, Fayetteville East, Fayetteville West, Garner, Gastonia, Goldsboro, Greensboro, Greenville, Hickory, High Point, Jacksonville, King, Kinston, Laurinburg, Lumberton, Midway, Mocksville, Monroe, Mount  Airey, New Bern, Rockingham, Rocky Mount, Salisbury, Sanford, Shallotte, Shelby, Troy, Wadesboro, Washington, Whiteville, Wilmington, and Wilson.

information, as set forth in the Order[4]. On January 25, 2014, the Trustee filed a Motion for Order

---

[4] The February 14, 2014 Order of this Court directed Badcock to submit to a Rule 2004 examination as follows: "W. S. Badcock Corporation shall:

a. Produce the following documents and records created between October 1, 2008 and December 31, 2010:

(1) All correspondence between W. S. Badcock Corporation and Edward L. Braxton and/or Levy Management Group, Inc, whether sent to or received from either party, and in whatever form, including but not limited to emails, facsimiles, and letters;

(2) All contracts and/or drafts of contracts between W. S. Badcock Corporation and Edward L. Braxton and/or Levy Management Group, Inc.;

(3) All records of payments paid to Edward L. Braxton and/or Levy Management Group, Inc. by W. S. Badcock Corporation, and all payments received by W. S. Badcock Corporation from Edward L. Braxton and/or Levy Management Group, Inc, including but not limited to, copies of checks, electronic transfers, ledgers, accounts receivable by W. S. Badcock Corporation from Edward L. Braxton and/or Levy Management Group, Inc, and accounts payable from W. S. Badcock Corporation to Edward L. Braxton and/or Levy Management Group, Inc.;

(4) All and any other documents regarding transactions, claims and counterclaims, including mediation of any such claims, whether formal or informal, between W. S. Badcock Corporation and Edward L. Braxton and/or Levy Management Group, Inc.

b. Records showing the name or names, addresses and phone numbers of any person having knowledge of any and all claims of breach of contract and/or defenses to claims of breach of contract between Edward L. Braxton or Levy Management Group, Inc. and W. S. Badcock Corporation.

c. All of the foregoing records which are maintained by W. S. Badcock Corporation shall be produced to the Trustee in printed form or formats readable in Word, WordPerfect, or PDF programs.

d. W. S. Badcock Corporation shall produce copies of the records identified above for inspection, examination, and copying to the Trustee pursuant to Bankruptcy Rule 2004 at the law office of Mills Paskert Divers located at 100 N. Tampa Street, Suite 3700, Tampa, Florida 33602 or in the alternative, if agreed to by the parties at the law offices of Shutts & Bowen, LLP located at 4301 West Boy Scout Boulevard, Suite 300, Tampa, Florida 33607, or another location mutually agreed upon by the parties on Monday, March 24, 2014 at 10:00 a.m.

2. W. S. Badcock Corporation is hereby ordered to designate and produce for oral examination under Rule 2004 one or more officers, agents, or employees with knowledge of the following information to submit to examination under oath by the Trustee pursuant to Rule 2004 at the law office of Mills Paskert Divers located at 100 N. Tampa Street, Suite 3700, Tampa, Florida 33602 or in the alternative, if agreed to by the parties at the law offices of Shutts & Bowen, LLP located at 4301 West Boy Scout Boulevard, Suite 300, Tampa, Florida 33607, or another location mutually agreed upon by the parties on Monday, March 24, 2014 at 10:00 a.m.:

a. Any and all conversations with Edward L. Braxton or any officer of Levy Management Group, Inc., any and all correspondence with Edward L. Braxton and/or Levy Management Group, Inc., any negotiations of any contracts between W. S. Badcock Corporation and Levy Management Group, Inc., and/or any other commercial dealings between W. S. Badcock Corporation and Levy Management Group, Inc. and/or Edward L. Braxton.

Confirming Authority of the Trustee Regarding Levy Management Group, Inc. and Enforcement of Its Claims Against Badcock. The Motion was served on Badcock, and no objections were filed. Accordingly, the Court entered the Order Confirming the Trustee's authority to administer the assets of Levy[5]. On January 29, 2014, Levy filed a state court action in Polk County Florida against Badcock for breach of contract and requested mediation and arbitration.

---

b. Any person having knowledge of any and all claims of breach of contract and/or defenses to claims of breach of contract between Edward L. Braxton or Levy Management Group, Inc. and the W. S. Badcock Corporation.

c. Any person having knowledge of any and all mediation and/or arbitration proceedings between W. S. Badcock Corporation and Levy Management Group, Inc. and/or Edward L. Braxton.

d. Any person or persons having knowledge regarding the financial records of W. S. Badcock Corporation which show:
     (a) charges and credits of commercial transactions between W. S. Badcock Corporation and Levy Management Group, Inc. and/or Edward L. Braxton, and
     (b) financial records which show any amounts claimed by W. S. Badcock Corporation to be due to Levy Management Group, Inc. from it upon termination of any contract between W. S. Badcock Corporation and Levy Management Group, Inc. and/or Edward L. Braxton or due to W. S. Badcock Corporation from Levy Management Group, Inc. and/or Edward L. Braxton upon termination of any contract between W. S. Badcock Corporation and Levy Management Group, Inc. and/or Edward L. Braxton.

3. For purposes of this order, W.S. Badcock Corporation includes any W. S. Badcock Corporation subsidiary or related or controlled entity, employee, officer, or person acting as an agent for W.S. Badcock Corporation."

[5] In the Order Confirming Authority of the Trustee entered by this Court on February 14, 2014, this Court concluded as a matter of law and ordered that:
"1. The stock of Levy is an asset of the Debtors' bankruptcy estate.

2. Stephen L. Beaman as the duly appointed Chapter 7 Bankruptcy Trustee, and has the rights, authority, duties, and responsibilities to administer the bankruptcy estate, including exercising all rights to vote stock of Levy Management Group, Inc. and as its sole shareholder take all appropriate corporate action. 3. Levy Management Group, Inc, has properly authorized Stephen L. Beaman to take all actions necessary to enforce its claims against Badcock.

IT IS ORDERED that Stephen L. Beaman, as Bankruptcy Trustee of the above named estate, has the authority as sole shareholder to direct the actions of Levy Management Group, Inc. necessary to enforce its claims against W. S. Badcock Corporation, and he is authorized and directed by this Court to continue to take actions deemed appropriate by the Trustee to do so, including but not limited to filing suits and participating in mediations and arbitrations of said claims."

## DISCUSSION

At the July 29, 2014 hearing the Trustee presented significant evidence demonstrating that since the 2004 Exam Orders and the Order Confirming the Authority of the Trustee have been entered, Badcock has willfully and continuously disregarded this Court's authority and has evaded its Orders.

In spite of and in disregard of the agreement between the Trustee and Badcock, on or about March 18, 2014, Badcock filed a Motion to Quash or Alternatively, Motion for Protective Order in the United States Bankruptcy Court, Middle District of Florida, Tampa Division contesting the authority of the Trustee to conduct the Rule 2004 examination which this Court specifically granted in the February 14, 2014 Order.  The Court finds this action to be the *first* instance of willful contempt of this Court's Order and willful disregard for the authority of this Court, after Badcock's Counsel had agreed that  the Rule 2004 examination of Badcock's officer take place in Florida and documents to be produced in Florida.

On May 5, 2014, the Honorable Michael Williamson of the United States Bankruptcy Court for the Middle District of Florida, entered an Order Granting in Part and Denying in Part Badcock's Motion to Quash and Motion to Stay. The Order provided that "the Motion to Quash is GRANTED to the extent the subpoena for the 2004 Exam shall be issued out of this court but on all other grounds raised, the Motion to Quash is DENIED."  To comply with the Florida Court's order, the Trustee had the subpoena issued by that Court and attached the 2004 Examination Order of this Court to the subpoena. Judge Williamson's Order simply required that a subpoena be issued out of his Honor's Court and required, "the 2004 exam to be conducted shall be within the scope of the examination prescribed by Fed. R. Bankr. P. 2004(b)".  Judge Williamson's May 5, 2014 Order left

7

the February 14, 2014 Order of this Court fully intact and enforceable and, by its terms, did not limit the scope of this Court's authority to enforce its own orders.

On March 24, 2014, the Trustee traveled to Florida to conduct the Rule 2004 Examination of Badcock per this Court's Order and the subpoena issued out of the Bankruptcy Court for the Middle District of Florida. The information Badcock was directed to provide included any and all conversations or correspondence between the Debtor or any officer of Levy regarding the negotiation of contracts between Debtor and Levy; any person having knowledge of any breach of contract claims and/or defenses to breach of contract claims between Debtor and Levy, and any person with knowledge of any and all mediation and/or arbitration proceedings between Debtor and Levy.

Instead of producing a witness with the required information, Badcock produced for examination an employee from the consumer accounts department who had no knowledge of the subject matter set forth in the Order. This witness came prepared to testify about a proof of claim filed by Badcock on a consumer account owed by the Debtor. Clearly, such was not the subject of the Rule 2004 examination Order. Badcock had more than sufficient notice with regard to what Badcock had been directed by this Court to produce to the Trustee. This Court finds Badcock's failure to produce a witness with the information Badcock had been directed to provide the Trustee, to be the *second* act of willful contempt and purposeful evasion of this Court's Order.  In addition, this Court finds that Badcock willfully disregarded the Order of Judge Williamson of May 5th, 2014, that left this Court's Order fully intact and enforceable, a *third* act of willful disregard of this Court's Order.

On May 19, 2014, subsequent to the Rule 2004 Examination in which Badcock failed to produce the documents and a witness as directed, Badcock filed another Motion for Protective Order in the United States Bankruptcy Court, Middle District of Florida, Tampa Division, once again challenging  the authority of the Trustee and frustrating his attempts to conduct a Rule 2004 examination.   Badcock alleged that the Trustee's examination of Badcock exceeded the scope of the Rule 2004 examination as "narrowed by Judge Williamson's order," when in fact the only change in that order required the Florida Bankruptcy Court to issue the subpoena. A hearing was held on that Motion on June 11, 2014.  Following the hearing, an order was issued initially granting Badcock's Motion for Protective Order.  The court in that instance found that the Trustee was prohibited from conducting further discovery aimed at the business relationship between Badcock and Levy because of the pendency of the action filed by the Trustee in state court on January 29, 2014.

On July 25, 2014 Judge Williamson, entered an Order Vacating his Order Granting Badcock's Motion for Protective Order As To Trustee's Rule 2004 Examination.  In that Order, Judge Williamson stated, "that the provision of its Order go beyond the allowances in Fed. R. Civ. P 45(d)(3)(A) and (B) and impermissibly curtail the North Carolina Bankruptcy Court's Order allowing the Rule 2004 examination of Badcock."  The Order then stated, "the 'pending proceeding rule' is not one of the items listed in Fed. R. Civ. P. 45(d)(3)(A) and (B), and therefore *it is for the North Carolina Bankruptcy Court who issued the Order allowing the Rule 2004 examination of Badcock to decide whether that doctrine should be applied so as to prevent the discovery sought by the Trustee* under the circumstances presented."  The Order further denied Badcock's Motion for Protective Order.

Badcock filed the May 19, 2014 Motion for Protective Order to prevent the Trustee from conducting the Rule 2004 examination in the face of three Orders of this Court allowing the Trustee to conduct the Rule 2004 examination and specifically granting the Trustee the authority to do so. The act of filing an additional motion for protective order in the United States Bankruptcy Court for the Middle District of Florida with the knowledge that the Trustee was acting lawfully and with the authority of this Court, is the *fourth* willful attempt on the part of Badcock to circumvent the direction and orders of this Court.

Counsel for Badcock argued at the July 29, 2014 hearing that the Trustee should have been prohibited from conducting a 2004 Exam or at least restricted in the scope and subject matter of the allowed exam because the Trustee had filed a separate pending proceeding[6] against Badcock in the Florida state court. This Court acknowledges the well founded principals establishing the purpose and boundaries of the Rule 2004 Examination. "An examination under Rule 2004 of the Federal Rules of Bankruptcy Procedure is not a substitute for discovery under Rule 26 of the Federal Rules of Civil Procedure. *In re Murphrey Company,* 2012 WL4855355 (quoting *In re Plainfield Ave. Inc.,* 223 B.R. 440, 455 (Bankr. D.N.J.1998). This Court further understands the importance of the pending proceeding rule and acknowledges that "it is well recognized that 'once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R.

---

[6]Levy Management Company vs. W.S. Badcock Corporation filed in Polk County, Florida in Case Number 2014-CA-000389 on January 29, 2014. The Trustee is not a party in the state court litigation. The Plaintiff is Levy Management, Inc. Therefore, there is no pending litigation against Badcock in which the Trustee is a party. The Trustee seeks a Rule 2004 examination and production of documents, separate and apart from Levy Management, Inc. The Trustee may very well discover other causes of action which may lie against Badcock, which is the Trustee's responsibility pursuant to 11 U.S.C. § 704. Depending on what is discovered, a claim by Levy for unfair and deceptive trade practices may be an appropriate claim by Levy. In addition, the Trustee might discover evidence that would support a claim against Badcock by Braxton, the Debtor. The Trustee states the state civil action was filed in order to toll any applicable statute of limitations.

Bankr.P. 7026 et seq., rather than by a Rule 2004 examination.'" *In re Murphrey Company,* 2012 WL4855355 (quoting *In re Bennet Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr.N.D.N.Y. 1996). The "pending proceeding rule" is "often invoked once an adversary proceeding or contested matter has been commenced in a bankruptcy case, especially if the discovery sought through Rule 2004 goes 'squarely to issues' involved in the pending litigation, in which case 'application of the formal discovery rules is appropriate.'" *In re Ramadan*, 2012 WL 1230272 *2 (Bankr. E.D.N.C. Apr. 12, 2012) (quoting *In re Job P. Wyatt & Sons' Co.,* 2011 WL 5909534 (Bankr.E.D.N.C.2011). This limitation on Rule 2004 examinations, is however, subject to exceptions.

The question the Court must ask when determining whether to apply the "pending proceeding" rule is based on the nature of the discovery that the Rule 2004 examination will reveal. "[A] relevant inquiry, when a party requests a Rule 2004 examination and there is litigation in another forum is whether the Rule 2004 examination will lead to discovery of evidence *related,* or *unrelated,* to the pending proceeding." *In re Ramadan*, 2012 WL 1230272 at *3.; See *In re Washington Mut., Inc.,* 408 B.R. 45, 51 (Bankr.D.Del.2009). Further, "[t]he difficult and relevant question is whether [the party's] *primary* purpose in the Rule 2004 examination/production is to further the administration of the bankruptcy case or to aid its pending state court litigation. *Id.* These crucial questions, as laid out in *Ramandan*, instruct this Court that the determination of whether the "pending proceeding" rule should apply to limit a Rule 2004 examination is based on the nature of the discovery the party will receive and the motive of the party seeking said examination.

Badcock cites to cases for the proposition that the Trustee should be barred by the pending proceeding rule, from using Rule 2004 examinations to discover information for use in the State

Court Action. *Snyder v. Society Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994) (finding no abuse of discretion when the bankruptcy court denied production of documents pursuant to a Rule 2004 Examination in light of the movant's primary motive to use in litigation for another cause of action when the motion for Rule 2004 examination was filed subsequent to the initiation of the state court proceeding); *In re L.L. Murphey Co.*, No. 12-03837-8-JRL, 21012 WL 4855355 (Bankr. E.D.N.C. Oct. 11, 2012) (upon reconsideration of an order allowing a motion to quash a deposition, the court allowed a party to conduct Rule 2004 examinations of entities, other than the debtor which would inevitably require the trustee to appear on behalf of the debtor, when an adversary proceeding was pending, but did not involve related issues.); *In re Job P. Wyatt & Sons' Co.*, 2011 WL 5909534 at *2 (Bankr. E.D.N.C. July 14, 2011) (ordering discovery to be conducted pursuant to the formal rules when the debtor filed a motion for Rule 2004 examination and the creditor objected to the motion on the grounds that a contested matter was initiated several days prior to the filing of the motion for 2004 examination and as such the formal rules should apply).  The case presently before the Court is distinguishable from these cases because here both original Motion for 2004 Examination and the Order granting such motion were filed prior to January 29, 2014 when Levy initiated the State Court action in Florida. Badcock did not file a response to the Motion and the Order was entered. Badcock was aware of the motion and what it was required to do under the Order. Subsequent to the Court entering the Order, Badcock contacted the Trustee and expressed concerns with the portion of the Order which required it to  produce certain documents to the Trustee in North Carolina. The Trustee then filed a modified application for permission to conduct the Rule 2004 examination in Tampa, Florida, as was previously ordered and to allow Badcock to produce the documents in Tampa, Florida, versus Wilson, North Carolina.

12

The documents and evidence requested by the Trustee of Badcock pertains to the relationship between Levy and Badcock and the communications or documents regarding the negotiations that took place between them. Levy's pending state court litigation involves possible breach of contract claims between Levy and Badcock and a request for mediation and arbitration as required by the four separate management agreements. The difficulty that exists and contributes largely to the frustration of the administration of the bankruptcy estate is Badcock's refusal to allow for an assessment, via a Rule 2004 examination, of whether any breach of contract claims exist at all. Without being afforded a Rule 2004 examination, the Trustee cannot determine whether it is necessary to proceed on the breach of contract claims in state court.

Of critical importance is the fact that the Trustee's Motion for Rule 2004 Exam was filed nearly two months prior to the commencement of the proceeding in which Levy is the Plaintiff, not the Trustee, now pending in the Florida state court. But for Badcock's purposeful evasion and willful contempt of this Court's Order granting the Trustee's Motion for 2004 Exam the first time it was entered, the Trustee would have been able to conduct the Rule 2004 exam and obtain the requested information and documents. If the Trustee had been able to conduct a meaningful Rule 2004 examination, he may have determined that Levy had no breach of contract claims against Badcock. In the alternative, if valid breach of contract claims did exist, Levy would have filed the civil action and the Rule 2004 examination would have been concluded. Further, the Trustee may have discovered additional claims against Badcock. In either circumstance, it is Badcock's actions and purposeful evasion of this Court's Orders that require this Court to find Badcock in willful contempt. Badcock should not be permitted to benefit from the intentional disregard of this Court's, or any court's orders.

To the second inquiry regarding the Trustee's motive, it is clear to this Court, that the Trustee's sole motivation in seeking the Rule 2004 examination of Badcock has always been and will continue to be the administration of the bankruptcy case and the advancement of the bankruptcy estate to locate assets for the benefit of the creditors. The Trustee indicated at the July 29, 2014 hearing that his attempts to conduct a Rule 2004 examination on Badcock were to determine if claims existed against Badcock which would benefit the bankruptcy estate of the Debtor[7]. This Court is satisfied that the motivation of the Trustee in seeking the Rule 2004 examination is for the advancement and administration of the bankruptcy case. Both inquiries set out in *Ramadan* to determine whether the pending proceeding rule should limit the scope of the Rule 2004 examination are answered by the facts of the present matter. This court finds that the nature of the discovery sought in the Trustee's Rule 2004 examination will serve to further the administration of the bankruptcy estate and that the Trustee's motivation in seeking the Rule 2004 examination is to further the administration of the Debtor's bankruptcy case.

The Trustee's Rule 2004 examination is appropriate in the present matter. The Court finds the distinction between Rule 2004 Examination and discovery under the Rules of Civil Procedure of Florida in this case to be of critical importance. "Discovery under Rule 2004 serves a far different purpose than discovery propounded under the Federal Rules of Civil Procedure. A Rule 2004 examination allows for a broad 'fishing expedition' into an entity's affairs for the purpose of obtaining information relevant to the administration of the bankruptcy estate." *Sweetland v. Szadkowski*, 198 B.R. 140 (Bankr.D.M.D.1996) (See *Ecam Publications, Inc.*, 131 B.R. at 559). The

---

[7] In his investigation, the Trustee could determine whether other claims existed that Levy could pursue such as unfair and deceptive trade practices, as well as other claims that Braxton, individually, might have against Badcock.

present matter of whether it is permissible for the Trustee to conduct Rule 2004 examination is one where Rule 2004 is "properly employed as a pre-litigation device for assessing whether grounds exist to commence an action" in favor of administration of the bankruptcy estate." *Sweetland v. Szadkowski*, 198 B.R. 140 (Bankr.D.M.D.1996) (quoting *In re Dinubillo,* 177 B.R. 932, 941 (E.D.Cal. 1993). In the matter before this Court, the Motion for Rule 2004 Examination was filed and served on Badcock, with no response or objection, *nearly two months before the state court litigation was filed*. The Trustee was attempting to conduct a Rule 2004 examination of Badcock to determine whether grounds exist to commence an action in favor of administration of the bankruptcy estate resulting from Badcock's relationship with Levy, which is the exact purpose of a Rule 2004 examination. The Trustee's attempts to conduct the Rule 2004 examination were futile because of Badcock's continuous evasion of this Court's Order such that the Trustee was not able to conduct a meaningful Rule 2004 examination. The Trustee explained to this Court, that because of Badcock's delay in allowing a meaningful Rule 2004 exam to occur, the statute of limitations might expire on the breach of contract claim that Levy, through the Trustee, had authority to pursue.

In addition, the Florida Rules of Civil Procedure do not contain a Rule 41(a)(1)(2) provision, like the North Carolina Rules of Civil Procedure, allowing the action to be commenced again within one year after a dismissal without prejudice. The Trustee had no way to determine whether valid breach of contract claims existed as Badcock would not comply with this Courts order for a Rule 2004 exam. Therefore, Levy was forced to file the pending civil action or face the loss of what could be valid and valuable breach of contract claims in the bankruptcy estate. Badcock now argues, that because there is a pending proceeding filed in the state court in Florida, that the Trustee should be prevented from conducting a Rule 2004 examination. This Court does not agree. The Court finds

that it is permissible and appropriate for the Trustee to conduct a Rule 2004 examination for the purpose of gathering information to administer the bankruptcy estate of the Debtor, especially when the efforts began before the filing of the state court litigation, but have now only become a request subsequent to the pending proceeding because of Badcock's delay and refusal to comply with this Court's Order.

Finally, as counsel for both parties stated during the July 29, 2014 hearing, Levy's state court civil action for breach of contract claims against Badcock in the Florida state court are governed and controlled by the four management agreements executed by Levy and Badcock.  Those four agreements may limit the means of discovery in a dispute between Levy and Badcock to mediation under one agreement and arbitration under the remaining three agreements. In this case, the Trustee argues that he may be limited to discovery allowed in arbitration, which the Trustee believes Badcock will attempt to severely limit. In addition, the Trustee's local counsel advised that Levy would be unable to conduct any meaningful discovery in the stat civil action until Badcock's Motion to Dismiss had been adjudicated. The Trustee believes Levy has no real or reasonable prospect of discovery in the pending proceeding. Therefore, this Court finds that a Rule 2004 examination of Badcock as ordered is appropriate.

Counsel for Badcock argues that if the Trustee is to be permitted to conduct a Rule 2004 examination of Badcock  that it should be conducted in Polk County Florida, not in North Carolina. Badcock argues that the presumption for a corporate defendant to be deposed, in this case examined pursuant to Rule 2004, is in the district of the corporation's principal place of business. *In re Outsidewall Tire Litig.*, 276 F.R.D. 466, 471( E.D.Va.2010). Badcock argues that this presumption can be overcome, "but only where circumstances exist distinguishing the case from the ordinary run

of civil cases." *In re Outsidewall Tire, 276 F.R.D.* at 472.  Badcock argues that there are factors that may overcome this presumption and persuade the court to permit the deposition be taken elsewhere. *Armsey v. Medshares Mgmt. Serv., Inc.*, 184 F.R.D. 569, 571 (W.D.Va. 1998).  The factors set forth in *Armsey* which may persuade the court to permit the deposition be taken elsewhere include: (1) location of counsel in the forum district; (2) the number of corporate representatives to be deposed; (3) the likelihood that significant discovery disputes will arise and necessitate resolution by the forum court; (4) whether the persons sought to be deposed often engage in travel for business purposes; and (5) the equities with regard to the nature of the claim and the parties' relationship. *Armsey,* 184 F.R.D. at 571. This case also states, however, that "[c]ourts have broad discretion to determine the appropriate location for a deposition," which in the present matter comes in the form of a Rule 2004 examination. *Id.*

    Counsel for Badcock neglects to recall that this Court exercised its discretion to determine the location of the Rule 2004 production of documents and the location of the examination. This Court ordered on December 31, 2014 that the production of the documents was to occur at the Trustee's office in North Carolina, which did not require a representative of Badcock to travel to North Carolina.  That Order allowed the examination of Badcock to take place in Florida.  Counsel neglects to recall that Badcock ignored that Order to produce documents in North Carolina and renegotiated with the Trustee to have the production conducted in Florida as well.  Graciously, this Court entered a Modified Order on February 14, 2014 allowing the Rue 2004 production as well as the examination to be conducted in Florida.  Counsel, astonishingly, further neglects to recall that on March 24, 2014, the Trustee  traveled to Polk County Florida to conduct a Rule 2004 examination.  In that examination, Badcock chose to produce a witness who had absolutely no

knowledge of information Badcock was ordered to produce by this Court.  Further,  Badcock was served and received notice of the request for Rule 2004 examinations by the Trustee, and not once did Badcock file a response, objection, or motion to reconsider in the above mentioned instances. For these reasons, this Court finds that Badcock's actions remove the present matter from the "ordinary run of civil cases" contemplated by *Outsidewall,* and that the principal of equities stated in *Armsey* are certainly served by permitting the Rule 2004 examination to now be conducted in North Carolina.

This Court further finds, even if it momentarily disregards the bad acts of Badcock, the factors laid out by  *Armsey* are still satisfied by permitting the Rule 2004 examination to be conducted in North Carolina.  Badcock has counsel in North Carolina who has represented them in recent hearings before this Court.  There is only one corporate representative to be examined. As evidenced by Badcock's behavior and actions in this litigation thus far, there is a high likelihood that disputes regarding the Rule 2004 examination will arise necessitating the involvement of this Court in North Carolina.  There is no way to determine whether the individual to be deposed often engages in travel for business purposes as Badcock has still not designated the individual who will be examined.  Finally, and perhaps most importantly, the equities with regard to the nature of the parties' relationship in this litigation thus far demand that the Rule 2004 examination be conducted in North Carolina.

Badcock has filed a pending Motion to Dismiss the state court proceeding raising Levy's authority to bring the lawsuit as the basis for dismissal, once again challenging the authority and the February 14, 2014 Orders of this court confirming the Trustee's Authority. The Court finds that Badcock's act of filing the Motion to Dismiss in Florida arguing that Levy, through the Trustee,

does not have authority to pursue the claims, in the face of this Court's Order granting said authority, is a *fifth* instance of contempt by Badcock and a blatant disregard for this Court's authority and a purposeful evasion of this Court's Orders. Also, at the hearing on July 29, 2014, the Court urged that Badcock voluntarily continue the hearing on said Motion to Dismiss, so that the Trustee might conduct the Rule 2004 examination prior to a hearing on the Motion to Dismiss so that the Trustee would have been able to determine whether to go forward with the breach of contract claims prior to the hearing.  Counsel for Badcock stated repeatedly, that Badcock was unwilling to continue the hearing on the Motion to Dismiss in Polk County Florida.

This Court finds that Badcock is in continuing contempt of this Court's Orders. Bankruptcy courts have the power to impose civil sanctions based on contempt. *In re Stasz*, 387 B.R. 271 (B.A.P. 9th Cir. 2008) (Debtor was sanctioned by the bankruptcy court because Debtor's conduct demonstrated repeated refusal to comply with the court's clear order to appear for a 2004 examination. The bankruptcy court decision was affirmed, as the court could not find that the bankruptcy court abused its discretion by holding Debtor in civil contempt and imposing sanctions on her.); See *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F. 3d 278, 284-85 (9th Cir. 1996) ; see also 11 U.S.C. § 105 (a).

To establish civil contempt, the movant must demonstrate the following elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;

> (2) . . . that the decree was in the movant's "favor";

19

(3) . . . that the alleged contemnor by its conduct violated the terms of the decree,

and had knowledge (at least constructive knowledge) of such violations; and

(4) that [the] movant suffered harm as a result.

*In re Kirkbride*, 2010 WL 4809334 at *3 (citing *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000).

This Court finds that overwhelming factual evidence was presented at the July 29, 2014 hearing to show that Badcock willfully violated Orders of this Court and is in contempt of this Court's Orders. The elements for a finding of civil contempt were satisfied by the clear and convincing evidence presented by the Trustee at the July 29, 2014 hearing. The Court's February 14, 2014 Orders allowing the Trustee to conduct a Rule 2004 Examination and Confirming the Trustee's authority are valid decrees of this Court and were served on Badcock, giving Badcock actual knowledge of the directives in the Order. The February 14, 2014 Orders were in the Trustee's favor. There is no question that Badcock and counsel had knowledge of the Court's Orders and willfully violated and purposefully evaded the Court's Orders. Clear and convincing evidence of Badcock's willful violation was presented at the July 29, 2014 hearing. Finally, the Trustee has suffered harm because of Badcock's willful violation and contempt of this Court's Orders. The Trustee has incurred significant fees defending his authority as Trustee and the authority to conduct a Rule 2004 exam. Further, the Trustee has incurred significant expenses in traveling to Florida to attempt to conduct a meaningful 2004 exam, hiring local counsel in Florida, and in litigating the matter as a whole.

This Court finds that Badcock has participated in a willful and purposeful evasion and deliberate disobedience of the Court's above mentioned Orders and the Order of the Honorable

Michael Williamson dated May 5, 2014, entered in the United States Bankruptcy Court for the Middle District of Florida. In addition, the initial Motion for Rule 2004 Exam was filed prior to Levy's filing the state civil action. Further, the Court finds that Levy has no reasonable expectation that attempts at discovery in the civil action will be honored by Badcock and therefore this pending state court proceeding is no bar to the Order for Rule 2004 Exams.

Badcock had scheduled a hearing on Badcock's Motion to Dismiss set for July 30, 2014 in Polk County Florida in the state court action. Badcock's Motion to Dismiss argued that the Trustee did not have authority to pursue the breach of contract claims against Badcock. During the July 29, 2014 hearing, this Court asked Badcock on several occasions to voluntarily withdraw that Motion, or at the very least continue it so that a Rule 2004 examination could be conducted. However, even after counsel for Badcock expressed to this Court, the sentiment that he wished he could go back to December 2013 and take a different course of action, namely allowing the Trustee to conduct a Rule 2004 exam and also change the course of action that Badcock had taken, counsel for Badcock still refused to continue the Motion to Dismiss set to be heard the following day in Florida. Because Badcock refused to voluntarily continue the Motion to Dismiss, this Court ordered that Badcock not go forward with the hearing of that Motion and take no action in the Florida state court to further the Motion to Dismiss. This Court has the authority to sanction a party, a party's officer, director, agent, or witness when said party fails to obey an order to permit discovery. Fed. Rule Civ. P. 37. Federal Rule of Civil Procedure 37 states that, "the court where the action is pending may issue further just orders. They may include the following: ... (iii) striking pleadings in whole or in part." For Badcock's failure to comply with the Orders of this Court allowing Rule 2004 Motions, this

Court issued the Order directing Badcock to not go forward with the hearing on the Motion to Dismiss on July 30, 2014, in Polk County Florida.

Therefore, Badcock shall be sanctioned for its willful and continuing contempt and purposeful evasion of the Orders of this Court. Bankruptcy Courts have the duty and the authority to regulate the litigants, such as Badcock, that appear before it and to address improper conduct. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (discussing the inherent authority of courts to regulate litigants); *In re Weiss,* 111 F.3d 1159 (4th Cir.1997). "Section 105 gives to bankruptcy courts the broad power to implement the provisions of the bankruptcy code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel." *In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000) (citing *In re Volpert*, 110 F. 3d. 494, 500 (7th Cir. 1997) and *Caldwell v. Unified Capital Corp*. (*In re Rainbow Magazine, Inc.*), 77 F.3d 278,284 (9th Cir. 1996)). Further, this Court may "rely on its inherent power as a sanctioning tool in instances where statutes or rules prove inadequate to remedy misconduct." *In re Ulmer*, 363 B.R. 777 (D.S.C. 2007); See *In re DeVille*, 361 F.3d 539,551 (9th Cir. 2004) (citing *Chambers*, 501 U.S. at 49-50, 111 S.Ct 2123). This Court is within its right and has inherent authority to sanction Badcock.

With regard to the monetary sanction imposed on Badcock, this Court does not lightly consider these sanctions. The Court has wide discretion in determining the sanction, "bearing in mind that it is to be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." *In re Berghoff,* 2006 WL 1716299 (Bankr. N.D. Ohio June 20, 2006); See Fed. R. Bankr. P. 9011(c)(2). "The sanction power is to be exercised 'with restraint and discretion." *In re Berghoff,* 2006 WL 1716299 *2 (Bankr. N.D. Ohio June 20, 2006) (quoting

*Mapother v. Mapother, P.S.C. v. Cooper (In re Downs),* 103 F.3d 472, 477 (6th Cir.1996). This Court finds that Badcock's refusal to not go forward with the hearing voluntarily, or in the alternative, continue the Motion to Dismiss again challenging the Trustee's authority, after Badcock received notice that this Court issued an Order Confirming that authority of the Trustee, is willful contempt and purposeful evasion of this Court's Orders.  The facts of this present matter and the clear and convincing evidence of  Badcock's willful disregard of this Courts orders, including refusal to submit to a Rule 2004 examination as directed by the Court in this Court's December 2013 Order, this Court's February 14, 2014 Order and Judge Williamson's May 5, 2014 Order; continuously questioning the  authority given to the Trustee to administer the bankruptcy estate as confirmed by this Court's February 14, 2014 Order, and willful disregard of Judge Williamson's Order denying the Motion to Quash, warrant sanctions.  Badcock is further deserving of sanctions because of the representations made to this Court by counsel for Badcock at the July 29, 2014 hearing. Counsel for Badcock's statements to the Court indicated that Badcock wished it could go back to December 2013 and comply with this Court's orders. That statement was shortly followed by Badcock's blatant refusal to voluntarily continue the pending hearing on Motion to Dismiss scheduled in Florida on July 30, 2014.  This not only demonstrates a lack of respect for this Court but even further detailed Badcock's willing and purposeful refusal to comply with and blatant disregard for the Orders entered by this Court.  The Trustee believes Badcock has given every indication, both by its actions and statements in the July 29, 2014 hearing, that Badcock will continue this pattern of contempt and disregard for Orders issued from this Court unless significant sanctions are imposed.  The Court concurs in the Trustee's argument. Significant monetary sanctions are proper in this case in order to deter future willful avoidance of this Court's orders by Badcock.

23

IT IS ORDERED that W.S. Badcock Corporation and its counsel withdraw the Motion to Dismiss in Case Number 2014-CA-00389, which is set for hearing on July 30, 2014 in the Circuit Court in Polk County, Florida. Should W.S. Badcock Corporation and counsel, fail to withdraw the Motion to Dismiss and continue to proceed with the above mentioned case, further sanctions may be imposed for the willful violation and contempt of the Orders of this Court.

IT IS ORDERED that Stephen Beaman, Trustee, is awarded fees in the amount of $32,323.50 and expenses in the amount of $1,922.55 which should be paid to Mr. Beaman by Badcock within fourteen (14) days of the date of this order.[8]

Finally, as further sanctions for the willful, knowing, and deliberate disregard for the Orders of this Court, a sanction of $50,000.00 is ORDERED against Badcock, which said amount shall be paid to the trustee for the benefit of debtor's estate within fourteen (14) days of the date of this Order.[9]

**SO ORDERED**.

**END OF DOCUMENT**

---

[8] The Trustee submitted an affidavit setting forth the legal services rendered and costs advanced. The Court finds the fees to be reasonable for the time spent by counsel in these matters.

[9] In open court, the Court required the $50,000.00 be paid by August 5, 2014. The Court has modified that date to fourteen (14) days after the date of this Order.