IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
CONSOLIDATED ACTION
No. 4:14-CV-168-BO

| | |
|---|---|
| W.S. BADCOCK CORPORATION, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | )  **ORDER** |
| | ) |
| STEPHEN L. BEAMAN, as Chapter 7 | ) |
| Trustee of the Estate of Edward L. Braxton | ) |
| and Wanda F. Braxton, | ) |
| | ) |
| Appellee. | ) |

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

This cause comes before the Court on appeal from the Bankruptcy Court for the Eastern District of North Carolina's order of July 29, 2014, imposing sanctions on appellant. A hearing was held on the matter before the undersigned on April 29, 2015, at Raleigh, North Carolina. For the reasons discussed below, the decision of the bankruptcy court to impose sanctions is reversed in part and vacated in part.

**BACKGROUND**

Appellee, Stephen L. Beaman, is Chapter 7 trustee of the estate of Edward L. and Wanda F. Braxton. The Braxtons filed for Chapter 13 bankruptcy protection in October 2009 and the matter was converted to a proceeding under Chapter 7 in June 2011. [DE 2-5 p. 1]. Edward Braxton solely owned and operated Levy Management Group (Levy), a North Carolina corporation. *Id.* Prior to filing for bankruptcy protection, Levy had executed contracts with

appellant, W.S. Badcock Corporation (Badcock or appellant), to operate four Badcock furniture stores in Wilson, Rocky Mount, Greenville, and Washington, North Carolina. [DE 6-1 pp. 27-78].[1] In January 2009, Levy notified Badcock that it wished to liquidate its interests in the North Carolina stores. [DE 3-6 p. 10]. Badcock elected, pursuant to the dealership agreements, to purchase commissions earned by Levy but not yet remitted and to operate the North Carolina stores formerly operated by Levy. [DE 3-6 pp. 11-12]. The trustee contends that, though Braxton and his counsel attempted to recover the commissions owed to Levy under the dealership agreement, including having participated in mediation in Florida, no resolution has been reached regarding the amount of commissions due to Levy. *See* [DE 2-5 p. 2].

While Levy was operating Badcock stores, Edward Braxton entered into a personal retail credit agreement with Badcock to allow him to purchase furniture from Badcock stores on credit at discounted rates. Badcock filed a proof of claim with respect to its personal retail credit agreement in the Braxton bankruptcy proceeding and such claim was fully resolved in March 2010. [DE 3-6 pp. 2-8].

In December 2013, the trustee moved in the bankruptcy court for permission to conduct a Rule 2004 examination of Badcock in Tampa, Florida, with documents to be produced to the trustee in North Carolina by December 20, 2013. [DE 2-1]. The trustee contended that the debtor, Edward Braxton, owned the entire interest in Levy which was not scheduled in the petition, and that the trustee believed that the assets of Levy may be liquidated for a sum greater than its liabilities. The motion for Rule 2004 examination of Badcock was granted, without opposition by Badcock after service of the motion, by order entered December 31, 2013. [DE 2-2].

---

[1] The record on appeal in this matter, as agreed by the parties, is located in case 4:14-CV-175-BO.

On January 25, 2014, the trustee filed a motion for order confirming authority of the trustee regarding Levy and enforcement of its claims against Badcock. [DE 10-5]. The motion was granted, without opposition by Badcock after service of the motion, by order entered February 14, 2014. [DE 2-5]. Also on January 25, 2014, the trustee moved for a modified order for Rule 2004 examination of records and employees of Badcock. [DE 2-3]. The trustee sought to amend the Rule 2004 order to require production of specific documents held by Badcock relating to, *inter alia*, correspondence, contracts, payments, and transactions between Badcock and Levy. The motion further requested that Badcock designate a person or persons with knowledge regarding, *inter alia*, conversations and communications with Braxton or Levy, contract claims between Braxton or Levy and Badcock, and financial records of Badcock relating to Levy to appear at the examination. [DE 2-3]. The motion was granted, without opposition by Badcock after service of the motion, by order entered February 14, 2014. [DE 2-4]. The documents and person designated for oral examination were to be produced on March 24, 2014, at a location in Tampa, Florida. *Id*. On or about January 27, 2014, Levy filed suit for breach of contract and enforcement of arbitration in the Circuit Court for Polk County, Florida. [DE 41 pp. 27-30].

On March 18, 2014, Badcock filed in the Bankruptcy Court for the Middle District of Florida a motion to quash or alternatively for protective order. The Florida bankruptcy court granted in part and denied in part the motion, quashing the 2004 exam subpoena issued by the North Carolina bankruptcy court and ordering that the subpoena be issued by the Florida bankruptcy court, but denying the motion on all other grounds raised. [DE 4-1 p. 35]. The order further directed the Rule 2004 exam to be conducted "within the scope of examination as prescribed by Fed. R. Bankr.P. 2004(b)." *Id*. The trustee reissued his subpoena from the Florida

bankruptcy court on April 25, 2014, for an examination to be held on May 12, 2014, in Tampa, Florida. [DE 2-9 pp. 22-23].

The Rule 2004 examination took place on May 12, 2014, with the trustee and a representative of Badcock. Badcock's representative was prepared only to testify as to Braxton's personal credit account with Badcock, which Badcock believed to be the proper scope of the examination as limited by the Florida bankruptcy court. Badcock further failed to produce any documents ordered for production by the North Carolina bankruptcy court's amended order. [DE 10-5]. Following the Rule 2004 examination, Badcock filed a motion for protective order as to the Rule 2004 examination in the Florida bankruptcy court. [DE 5-1]. At a hearing on the matter, the Florida bankruptcy court granted Badcock's motion, and an order was entered on June 26, 2014. [DE 2-9 pp. 17-18]. Specifically, the order held that the trustee was prohibited from further attempting to discover information relating to Badcock's relationship with Levy by Rule 2004 examination or otherwise while there is a pending proceeding by the trustee on behalf of Levy against Badcock pending in state court. *Id.* The trustee moved for reconsideration, and the Florida bankruptcy court after a hearing on July 21, 2014, amended its order, holding that it had exceeded its authority under Rule 45 of the Federal Rules of Civil Procedure and that it was for the North Carolina bankruptcy court to decide whether the Rule 2004 examination and particular discovery requested should be precluded by the "pending proceeding" rule. [DE 10-5 p. 9]. Badcock was permitted to seek a protective order from the North Carolina bankruptcy court. [DE 7-4 p. 61]. The trustee was assessed $750 in attorney's fees not as a sanction but "as a fee shifting under the equities of the case."[2] *Id.* at pp. 59-60.

---

[2] This fee award was based on the trustee's actions in filing a motion seeking another corporate representative examination of Badcock when the Florida bankruptcy court had just two days prior ruled that the trustee is prohibited from further attempting to discover information relating to Badcock's relationship with Levy. [DE 7-4 pp. 41-42].

4

Badcock proceeded to file a motion for protective order in the North Carolina bankruptcy court on July 25, 2014. [DE 5-3]. On June 13, 2014, the trustee had filed a third motion for Rule 2004 Examination of Badcock and a motion for order to appeal and show cause in the North Carolina bankruptcy court. [DE 2-6 & 2-7]. The North Carolina bankruptcy court issued its show cause order [DE 2-8] held a non-evidentiary hearing on July 29, 2014. The bankruptcy court entered an oral order granting the trustee's six motions for Rule 2004 examination, denying Badcock's motion for protective order, imposing a fine of $50,000 to be paid by Badcock into the bankruptcy estate, awarding the trustee attorney's fees and costs in an amount to be determined, and directing Badcock to withdraw its motion to dismiss for lack of standing in the Polk County, Florida state court proceeding set for hearing the next day. A written order addressing non-monetary sanctions was entered the same day [DE 1-1] and an amended order was entered on August 21, 2015. [DE 10-5].

## JURISDICTION AND STANDARD OF REVIEW

Jurisdiction over this appeal is proper pursuant to 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals...from final judgments, orders, and decrees...of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." *See also In re Armstrong*, 304 B.R. 432, 434-35 (B.A.P. 10th Cir. 2004) ("The bankruptcy court's order imposing sanctions is a final order subject to appeal under 28 U.S.C. § 158(a)(1)."). A bankruptcy court's findings of fact shall not be set aside unless clearly erroneous and legal conclusions made by the bankruptcy court are reviewed *de novo*. *In re White*, 487 F.3d 199, 204 (4th Cir. 2007).

This Court reviews the imposition of sanctions and award of attorney's fees for abuse of discretion. *In re Weiss*, 111 F.3d 1159, 1169 (4th Cir. 1997); *Harman v. Levin*, 772 F.2d 1150,

1153 (4th Cir. 1985). A bankruptcy court abuses its discretion if it bases its ruling on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). "Otherwise, to reverse for abuse of discretion [the reviewing court] must have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached." *In re Stasz*, 387 B.R. 271, 274 (B.A.P. 9th Cir. 2008).

## DISCUSSION

The issue on appeal is whether the bankruptcy court erred as a matter of law and abused its discretion in imposing punitive monetary and nonmonetary sanctions against appellant, a non-party to the debtor's bankruptcy proceeding. In support of the appeal, Badcock contends first that the bankruptcy court imposed criminal contempt sanctions, as opposed to civil contempt sanctions, which the bankruptcy court is without authority to impose. Badcock next contends that if the bankruptcy court had the authority to impose sanctions, it abused its discretion in finding Badcock in contempt.

A bankruptcy court has the authority to hold a party in civil contempt and to impose sanctions. 11 U.S.C. § 105(a); *In re Walters*, 868 F.2d 665, 670 (4th Cir. 1989). The critical features a court considers when determining whether a contempt sanction is civil or criminal are the substance of the proceeding and the character of the relief that the proceeding will afford. *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 631 (1988). A contempt sanction is civil when the punishment is remedial and for the benefit of the complainant, while criminal contempt imposes punitive sanctions to vindicate the authority of the court. *Id.* (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)). "If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court". *Feiock*, 485 U.S. at

6

632. Further, a civil contempt sanction is generally "conditional or contingent in nature, terminable if the contemptor purges himself of the contempt." *Carbon Fuel Co. v. United Mine Workers of Am.*, 517 F.2d 1348, 1349 (4th Cir. 1975). A court's characterization of the nature of its sanctions is not binding on a reviewing court. *Bradley v. Am. Household Inc.*, 378 F.3d 373, 377 (4th Cir. 2004).

A. Monetary Sanctions

The $50,000 fine was criminal in nature. Though the monetary sanction in this instance was made payable to the debtor's estate, not to the bankruptcy court, it was in no way conditioned on continued non-compliance. Moreover, the bankruptcy court's order reveals that its intention was to punish Badcock for its willful violations of the court's orders and its lack of respect for the court, as well as to "deter repetition of such conduct or comparable conduct by others similarly situated." [DE 10-5 p. 22-23]; *see Buffington v. Baltimore Cnty., Md.*, 913 F.2d 113, 133 (4th Cir. 1990)(deterrence of future litigants' conduct reveals criminal nature of contempt). Nor was the fine "determined by reference to any losses incurred by the [debtors] as a result of [Badcock's] failure to" comply with the Rule 2004 orders. *Bradley*, 378 F.3d at 378. For these reasons, the Court holds that the $50,000 fine imposed was criminal and not civil in nature, and that the bankruptcy court was therefore without the authority to impose it. *See e.g. In re McDonald*, 497 B.R. 489, 493-94 (Bankr. D.S.C. 2013) (certifying the issue of whether conduct in case constitutes criminal contempt to the district court); *see also Bradley*, 378 F.3d 379 ("At a minimum, criminal contempt defendants have the right to receive notice of the criminal nature of the charges, and to be prosecuted by an independent prosecutor, and to have their guilt determined beyond a reasonable doubt) (internal citations and quotations omitted).

7

The bankruptcy court further awarded attorney's fees and costs to the trustee for its efforts in attempting to gain Badcock's compliance with the bankruptcy court's Rule 2004 orders. In imposing the sanction, the bankruptcy court's order notes the trustee's travel to Florida for a fruitless examination, it hiring of local counsel in Florida, and its litigation of the Rule 2004 examination matter as a whole. This sanction was civil in nature because its intent was to compensate the debtors for their efforts. *See Bradley*, 378 F.3d at 378; *Cromer v. Kraft Foods, Inc.*, 390 F.3d 812, 822 (4th Cir. 2004) (the Fourth Circuit has "recognized attorneys' fees as appropriate compensation" to a complainant in civil contempt sanctions). Therefore, the bankruptcy court acted within its authority in imposing it. However, the Court agrees with appellant that the bankruptcy court's entry of an amount of attorney's fees and expenses without providing an opportunity to Badcock to respond and challenge the reasonableness of the fee was error amounting to an abuse of discretion. This civil contempt sanction is therefore VACATED and remanded to the bankruptcy court for further briefing and consideration.

B. Non-monetary sanction

Finally, the bankruptcy court imposed a non-monetary sanction against Badcock by ordering it to withdraw its motion to dismiss filed in the state court action in Polk County, Florida. In so doing, the bankruptcy court cited no authority for such a sanction, and this Court is unaware of any contempt power which would allow an Article I court to require a party to abandon rights as asserted in litigation pending in another court. Finding no basis for the imposition of such a sanction, this Court is of the impression that this portion of the bankruptcy court's sanction order is based on an erroneous view of the law, or that the bankruptcy court committed an error in judgment in imposing it. Therefore, even if this sanction was civil in nature, the bankruptcy court abused its discretion and its holding is reversed.

## CONCLUSION

It is for the foregoing reasons that the order of the bankruptcy court on appeal in this matter is REVERSED IN PART and VACATED IN PART. The bankruptcy court's award of $50,000 and order to withdraw a pending motion to dismiss in the Polk County, Florida litigation are REVERSED. The attorney fee and expense award is hereby VACATED and REMANDED to the bankruptcy court for further consideration consistent with the foregoing.

The clerk is DIRECTED to enter this order and judgment in the case consolidated herein, No. 4:14-CV-175-BO, and to provide a copy of this order and judgment to the Bankruptcy Court for the Eastern District of North Carolina.

SO ORDERED, this __7__ day of May, 2015.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE